UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Chafin and O'Brien
Argued at Fredericksburg, Virginia

ALAN D. WEBER

v.        Record No. 1132-17-2

COUNTY OF HENRICO

MEMORANDUM OPINION* BY
JUDGE MARY GRACE O'BRIEN
JUNE 5, 2018

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Richard S. Wallerstein, Jr., Judge

Norman A. Thomas (Norman A. Thomas, PLLC, on briefs),
for appellant.

John D. McChesney, Assistant County Attorney (Office of the
County Attorney, on brief), for appellee.


Alan D. Weber ("appellant") appeals a finding of contempt for his failure to comply with

court orders requiring him to abate all zoning violations on his residential property and maintain

compliance with Henrico County's zoning ordinance.  Finding no error, we affirm the court's ruling

and remand the matter for further proceedings consistent with this opinion.

BACKGROUND

In April 2005, Henrico County ("the County") received a complaint that appellant "was

storing junk and had an overweight truck" on his residential property.  An inspector from the

County's Department of Community Revitalization met with appellant but was unable to obtain

compliance with the zoning ordinance, codified at Chapter 24 of the Henrico County Municipal

Code.  The Henrico County General District Court subsequently convicted appellant of

"accumulation and storage of junk" at his residential property, in violation of Henrico County Code

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

§ 24-11,[1] and imposed a fine. Appellant also was found guilty of violating the same ordinance in April 2006 and February 2007.

In July 2007, the County filed for injunctive relief in Henrico County Circuit Court, alleging that appellant "continued to violate the county's zoning ordinance." Photographs attached to the complaint showed items piled in the front and side yards of appellant's property. On December 14, 2007, the parties signed a consent order agreeing that "[appellant] has remedied the violations on his property . . . and agrees to remain in compliance with the county's zoning ordinance in the future."

Between 2009 and 2013, the County brought multiple actions requesting that appellant be found in contempt for violating the December 2007 consent order. On five occasions, the court found appellant in violation, imposed a fine, and commanded that he abate the zoning violations. Specifically, on February 28, 2012, the court found appellant in contempt for violating the December 2007 order, imposed a fine, and ordered compliance with the zoning ordinance. On October 4, 2012, the court found appellant in contempt of both the December 2007 order and the February 28, 2012 order, imposed a fine, and required him to "abate all zoning violations on his property."[2]

This case began on June 30, 2016, when the County filed a motion requesting another order to show cause. The County alleged that appellant remained in violation of the County ordinance, and therefore, in violation of the previous orders. The motion attached photographs and the affidavit of a zoning inspector who had been "observ[ing] this property on multiple occasions over the past several years" and most recently that month "observed significant quantities of junk and debris in the front and side yards." The court issued show cause rules on July 8, August 23, and

---

[1] This provision of the County's zoning ordinance describes the principal uses of property in districts zoned as residential. See Henrico Code § 24-11(a)-(h).

[2] The court also found appellant in contempt on April 20, 2009, January 22, 2010, and April 1, 2013.

September 26, 2016. Each rule commanded appellant to appear and "show cause why he should not be held in contempt for his failure to comply with the prior orders of this [c]ourt, including its orders of December 14, 2007, February 28, 2012 and October 4, 2012."

Following a hearing on the show cause rules, the court entered an order on October 25, 2016 stating:

> The County represented to the [c]ourt that Weber was currently in compliance with this [c]ourt's prior orders in this matter. Based on the County's concerns about future noncompliance, however, the [c]ourt hereby ORDERS that this matter be continued until Friday, April 7, 2017 at 9:30 am.

On April 7, the court heard testimony from the County's zoning inspector and reviewed photographs showing the condition of appellant's property during the months leading up to the hearing and on the date of the hearing itself. The court entered an order on April 11 finding that appellant's property was "in violation of the County's zoning ordinances and, therefore, [appellant] has violated this [c]ourt's orders and is in contempt of court." The April 11 order further provided: "Specifically, the [c]ourt rules that the photographs show that [appellant] is storing junk on his property in violation of Henrico County Code §§ 24-6[3] and 24-70.[4]" The court continued the case to April 28 for the parties to "present evidence on [appellant's] compliance or noncompliance with the county's zoning ordinances and this [c]ourt's prior orders."

On April 28, the court again heard testimony from the County's zoning inspector and reviewed photographs of appellant's property. The County introduced aerial photographs depicting piles of items in appellant's backyard. Appellant also introduced two photographs of the front and side of his house, and he testified about the items in his backyard.

---

[3] Henrico County Code § 24-6 is a "general provision" requiring "conformity with the regulations herein specified."

[4] Henrico County Code § 24-70(c)(21) forbids "[j]unk storage" within six hundred feet of a residential district.

In its closing argument, the County explained that the aerial photographs were necessary because it "expected [appellant] would not clean up the backyard or would remove items from the front and side yards into the backyard" and "[t]he Code does not make any exception for the backyard." The County further argued that the zoning administrator had "specific discussions three weeks ago about . . . whether the backyard was included in the prohibition [against] junk storage" and had "clearly indicated that the backyard was not a safe haven for junk storage."

Following the April 28 hearing, the court entered an order on May 12 finding that appellant "has continued to violate this [c]ourt's orders and remains in contempt of court" and imposing a fine of one hundred dollars per day "for every day or part thereof that [appellant] remains in contempt . . . by failing to abate zoning violations." The matter was continued to June 9 for review.

At the June 9 hearing, Benjamin Blankenship, a zoning division manager for the County Planning Department, testified that he met with appellant, although not at his residence, and discussed "junk storage." Blankenship testified that, although the Henrico County Code does not specifically define the term "junk," the County inspectors consider the term to include "items of little value or [that] have outlasted their value." Reviewing photographs of appellant's property, Blankenship identified items in appellant's backyard that he believed to be junk, including machinery that was in "very poor repair" and "beyond its useful life" as well as things that were "not customary to residential use."[5] Blankenship reached the conclusion that appellant was continuing to store junk on his property because of the "collective situation" reflected in the aerial photographs of appellant's backyard.

---

[5] On appeal, appellant does not dispute that the items on his property met the County's definition of "junk."

- 4 -

Appellant also testified on June 9. He explained that after the April 28 hearing, he rented two storage units, sold some equipment, and "disposed of some other things." He "took a few things . . . to the landfill" and "emptied [his] scrap barrels at the scrap yard."

During appellant's testimony, his counsel inquired whether appellant would allow Blankenship to view his property. Appellant responded that Blankenship would probably be "the person best suited" to inspect the property, but only "at some point" in the future, after appellant worked on some "cleanup." *Sua sponte*, the court struck appellant's answer as nonresponsive.

At the conclusion of the June 9 hearing, the court noted that while "there have been some changes to the front yard since the last hearing . . . the rear yard continues to house [and] store junk and continues not to be in compliance." The court noted that although appellant was in compliance at least once during the twelve-year history of the case, "the file is replete with pictures of [appellant's] property and his continued noncompliance." By order dated June 28, 2017, the court ruled that appellant had not purged his contempt, ordered continuation of the daily fines, and docketed the case for July 21, 2017 to determine if appellant was in compliance with the zoning ordinance and the court's prior orders.

Appellant noted his appeal from this June 28, 2017 order pursuant to Code § 19.2-318. He asserts the following four assignments of error:

1. The trial court erred in finding Weber in civil contempt and sanctioning him for alleged zoning violations outside the scope of the applicable show cause orders for which he received no violation notice.

2. The trial court erred in finding Weber in civil contempt and sanctioning him because its interim orders of October 25, 2016, April 11, 2017, May 12, 2017, and June 28, 2017 failed to provide Weber with definite terms as to the duties thereby imposed upon him.

3. The trial court erred in finding Weber in civil contempt upon insufficient evidence, in that he abated the alleged zoning violations within the scope of the applicable show cause orders.

4.  The trial court erred in striking portions of Weber's June 9, 2017 testimony regarding his willingness to permit the County's zoning administrator to enter upon and inspect his property.

DISCUSSION

We review an adjudication of contempt for an abuse of discretion. Estate of Hackler v. Hackler, 44 Va. App. 51, 64-65, 602 S.E.2d 426, 433 (2004). A court's finding of contempt and imposition of sanctions "will not be reversed unless plainly wrong or without evidence to support it." Glanz v. Mendelson, 34 Va. App. 141, 148, 538 S.E.2d 348, 351-52 (2000) (quoting Brown v. Commonwealth, 26 Va. App. 758, 762, 497 S.E.2d 147, 149 (1998)). However, we review *de novo* the constitutional issue of whether a court has afforded a litigant due process of law. See Shivaee v. Commonwealth, 270 Va. 112, 119-20, 613 S.E.2d 570, 574 (2005).

A court may find a person in contempt for "[d]isobedience or resistance . . . to any lawful process, judgment, decree or order of the court." Code § 18.2-456(5). Contempt, whether criminal or civil, is a sanction. See Rainey v. City of Norfolk, 14 Va. App. 968, 971, 421 S.E.2d 210, 212 (1992). A court may only impose the sanction after finding sufficient evidence that a party has violated the terms of the court's order. See Michaels v. Commonwealth, 32 Va. App. 601, 609, 529 S.E.2d 822, 826 (2000). "'[F]or a proceeding in contempt to lie,' there 'must be an express command or prohibition' which has been violated." DRHI, Inc. v. Hanback, 288 Va. 249, 255, 765 S.E.2d 9, 13 (2014) (quoting Petrosinelli v. PETA, 273 Va. 700, 707, 643 S.E.2d 151, 155 (2007)).

Code § 15.2-2286 is a zoning statute that "permit[s] localities to impose land use restrictions through adoption of zoning ordinances." Epperly v. County of Montgomery, 46 Va. App. 546, 554, 620 S.E.2d 125, 129 (2005). Code § 15.2-2208(A) provides that "[a]ny violation or attempted violation of [Chapter 15], or of any regulation adopted hereunder may be restrained, corrected, or abated . . . by injunction." Pursuant to this statutory authority, Henrico County adopted a zoning ordinance at Chapter 24 of its Municipal Code. The ordinance includes a provision that forbids

"[j]unk storage" within six hundred feet of a residential district. Henrico County Code § 24-70(c)(21). The ordinance also provides that zoning administrators have authority to "invoke any . . . lawful procedure available to the [C]ounty, such as injunction, abatement or otherwise, as may be necessary to prevent, restrain, correct or abate any violation of this chapter." Henrico County Code § 24-111.

### 1. Show Cause Orders and Due Process

Appellant first contends that he received "inadequate notice of the alleged zoning violations for which the trial court held him in contempt and financially sanctioned him," and was thereby deprived of his due process rights. He argues that the show cause orders were limited to zoning violations for storing junk on his front and side yards, but he was held in contempt for storing junk in his backyard. Appellant asserts that he was subjected to a "moving target" of requirements.

The December 2007 consent order required appellant to remain in compliance with the County's zoning ordinance. The February 28 and October 4, 2012 orders reiterated the mandate that appellant "abate all zoning violations" and "maintain compliance." The provision requiring appellant to "maintain compliance" was a prohibitory injunction, designed to "prevent the future commission of an anticipated wrong." WTAR Radio-TV Corp. v. City Council of Virginia Beach, 216 Va. 892, 895, 223 S.E.2d 895, 898 (1976). A prohibitory injunction is authorized where, as here, "a statute or ordinance expressly empowers a court to grant injunctive relief against its violation." Ticonderoga Farms, Inc. v. County of Loudoun, 242 Va. 170, 176, 409 S.E.2d 446, 449 (1991). Because both a statute and the zoning ordinance expressly authorize injunctive relief, the court had authority to enjoin appellant's future noncompliance with the ordinance in the December 2007 order and the orders that followed.

Appellant asserts that the court erred by finding him in contempt for conduct outside the scope of the show cause orders; he contends that those orders were limited to zoning violations in

his front and side yards. He argues that he was deprived of due process because the County did not file a new show cause motion alleging zoning violations in his backyard. However, no language in either the December 2007 consent order or the subsequent contempt orders of February 28, 2012 and October 4, 2012 limited his compliance to only his front and side yards.

Due process is "flexible and cal[ls] for . . . procedural protections as the particular situation demands." Wilkinson v. Austin, 545 U.S. 209, 224 (2005) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Appellant was given ample notice and opportunity to be heard on the issue of junk storage on his property. Although the County's June 2016 motion for a show cause order referred to appellant's front and side yards, these examples of noncompliance did not abrogate appellant's court-ordered obligation to maintain his entire property in conformity with the zoning ordinance.

Appellant knew that his backyard was subject to the zoning ordinance. The April 11 order finding appellant in violation required him to comply with the county zoning ordinance. Nothing in the order limited compliance to the front and side yards. Additionally, the transcript from the April 28 hearing indicates that appellant was on notice at least by April 7 that the zoning violations included items stored in his backyard, not merely the items stored in his front and side yards. At the April 28 hearing, the County informed the court that it had "specific discussions three weeks ago about . . . whether the backyard was included in the prohibition of the junk storage on [appellant's] property" and that the zoning administrator had "clearly indicated that the backyard was not a safe haven for junk storage."

Furthermore, when the County introduced aerial photographs depicting junk storage in appellant's backyard, appellant did not object to the relevance of evidence relating to the condition of his backyard. These April 28 proceedings make clear that, as of April 7, appellant was certainly on notice that to avoid sanctions for contempt, he was required to abate *all* zoning violations on his

property by April 28; the requirement was not limited to his front and side yards. Because appellant was on notice that he would remain in contempt on April 28 if he was storing junk anywhere on his property, his due process rights were not violated.

## 2. Sufficiently Definite Terms

Appellant also argues that the court erred by finding him in contempt because the four orders entered on October 25, 2016, April 11, May 12 and June 28, 2017 lacked "sufficiently definite terms." We disagree. Each order clearly sets out appellant's obligation; it is the same requirement that was decreed back in the December 14, 2007 consent order. That order was a prohibitory injunction requiring appellant to "remain in compliance with the County's zoning ordinance."

The October 25, 2016 order indicating that appellant was currently in compliance continued the matter until April 7, 2017 to ensure that appellant's compliance continued. The April 11 order, resulting from the April 7 hearing, identified the precise zoning provisions violated and required abatement by April 28. The order reflected a finding that appellant was "storing junk on his property" and ordered him to "abate the zoning violations on his property." Likewise, following the April 28 hearing, the order entered on May 12 found that appellant "has continued to violate this [c]ourt's orders and remains in contempt" and set a hearing for June 9 to determine if appellant was in compliance "with the County's zoning ordinances and this [c]ourt's prior orders." The June 28 order, reflecting the court's finding on June 9 that appellant remained in contempt, once again ordered appellant to abate all zoning violations on his property.

Each of the orders that appellant challenges for a lack of "definite terms" contains the same requirement: that appellant abate the zoning violations on his property and maintain compliance with the zoning ordinance. The language of each order is clear and unambiguous; junk storage is not permitted anywhere on appellant's property.

- 9 -

### 3. Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence for the court's contempt finding. He argues that because the record demonstrates that he brought his front and side yards into compliance, the court could not find him in contempt.

On appeal, this Court reviews the sufficiency of the evidence in the light most favorable to the prevailing party. Glanz, 34 Va. App. at 148, 538 S.E.2d at 351-52. Appellant argues that his testimony at the April 28 hearing established that he had cleaned up his front and side yards. However, evidence adduced at that hearing also supported the court's finding that appellant had simply relocated most of the "junk" items to his backyard. Also, at the June 9 hearing, when appellant testified that he was "temporarily staging" some items in the front yard, the zoning inspector testified that the "collective situation" of property in appellant's backyard was not "customary or incidental" to residential use. The inspector's testimony was corroborated by the aerial photographs. Considered as a whole, the evidence was sufficient to establish that despite the precise language of the orders putting him on notice, appellant did not abate his junk storage.

### 4. Exclusion of Appellant's Testimony about Zoning Administrator

Finally, appellant contends that the court erred by *sua sponte* striking his answer to the question of whether he would allow the zoning administrator to inspect his property. "Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006) (quoting Breeden v. Commonwealth, 43 Va. App. 169, 184, 596 S.E.2d 563, 570 (2004)). Appellant asserts that his answer established his "willingness to work with the County" and his "waning resistance" to compliance. However, appellant merely responded that he *might* be willing to let the zoning administrator on his property "at some point" in the future.

This answer was evasive and non-responsive to the question of whether he would let the county official inspect his property on June 9.

Further, any error in striking the appellant's answer was harmless. Non-constitutional error is harmless if the error "failed to have any 'substantial influence' on the verdict." United States v. Lane, 474 U.S. 438, 450 (1986) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)). See also Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001). Here, the record was replete with evidence of appellant's disregard of the zoning ordinance, dating back to 2005. In finding that appellant remained in contempt, the court did not allude to the issue of whether and when appellant would be willing to submit to a property inspection. Instead, the court based its ruling on the evidence demonstrating appellant's continuous violation of the County's zoning ordinance.

CONCLUSION

For the above reasons, we affirm the judgment of the circuit court finding appellant in contempt and remand the matter to the circuit court for further proceedings consistent with this opinion.

Affirmed and remanded.